IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CUSTOMS AND TAX CONSULTANCY LLC,
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19081,

        Petitioner,

vs.

THE DEMOCRATIC REPUBLIC OF THE
CONGO,
Minister of Justice
Ministry of Justice
228 avenue de lemera
Gombe, Kinshasa
Democratic Republic of Congo,

        Respondent.

Civil Action No. ___1:18-cv-1408___

## PETITION TO CONFIRM ARBITRATION AWARD AND TO ENTER JUDGMENT

Petitioner Customs and Tax Consultancy LLC ("Petitioner" or "CTC"), by and through undersigned counsel, respectfully petitions the Court to confirm the International Chamber of Commerce, International Court of Arbitration (the "ICC") arbitral award described herein. The ICC tribunal determined that the Democratic Republic of the Congo ("Respondent" or "Democratic Republic of the Congo") is liable to CTC for breach of contract and is ordered to pay CTC's unpaid invoices totaling more than $90,000,000, as well as certain arbitral and legal fees paid by CTC, together with interest on the unpaid invoices and arbitral and legal fees.

Confirmation in this case is authorized by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention")[1] as implemented in Chapter 2 of the Federal Arbitration Act, codified at 9 U.S.C. § 201 *et seq.*

---

[1] December 29, 1970, 21 U.S.T. 25157, T.I.A.S. No. 6997, 390 U.N.T.S. 38 (1970).

CTC respectfully states:

1.      On July 22, 2015, the Arbitral Tribunal of three arbitrators, pursuant to an arbitration sited in and conducted over a period in excess of two years in Paris, France, rendered a partial award (the "Partial Award") in the case commenced by CTC, as Claimant, against the Democratic Republic of the Congo, as Respondent, before the ICC International Court of Arbitration, ICC Arbitration Case No. 19515/MCP. Documents relevant to this Petition are authenticated by and attached as exhibits to the accompanying Declaration of Jean-Christophe Honlet dated June 12, 2018 (the "Honlet Decl." or **Exhibit A**).

2.      The Partial Award resolved certain of the parties' claims, including:

      a.      Ruling and declaring that Democratic Republic of the Congo violated its contractual obligations towards CTC;

      b.      Ordering the Democratic Republic of the Congo to pay to CTC the unpaid invoices in the following amounts:

            i.      Monthly fixed remunerations in the amount of $49,064,000;

            ii.      Variable remunerations in the amount of $39,540,439;

            iii.      The balance of a certain mobilization indemnity in the amount of $3,091,908.72;

            iv.      Which amounts totaled $91,696,347;

            v.      Together with interest at the rate of 1.5% per month on each invoice as from five days after its presentation until full payment; and

      c.      Ordering the Democratic Republic of the Congo to pay to CTC the demobilization indemnity and repatriation allowance of its personnel in the amount of

$3,750,000 with interest at the rate of 1.5% per month from January 15, 2010 until full payment.

3.      A copy of the Partial Award is attached to the Honlet Declaration as **Exhibit 1**. The Partial Award is in French, the language of the arbitration. A certified translation is attached to the Honlet Declaration as **Exhibit 2**.

4.      On November 19, 2015, the Arbitral Tribunal rendered an addendum to the Partial Award (the "Addendum"), which corrected a calculation error in the Partial Award by awarding to CTC the additional amount of $853,751.

5.      A copy of the Addendum is attached to the Honlet Declaration as **Exhibit 3**. The Addendum is in French, the language of the arbitration. A certified translation is attached to the Honlet Declaration as **Exhibit 4**.

6.      On February 22, 2016, the Arbitral Tribunal rendered a final award (the "Final Award") (the Partial Award, Addendum, and Final Award, collectively, the "Arbitral Award") in the case. The Final Award:

    a.      Allocated the responsibility for arbitral fees as between the parties, ordering that the Democratic Republic of the Congo pay to CTC $162,500 in accordance with that allocation;

    b.      Decided liability for legal fees, ordering the Democratic Republic of the Congo to pay to CTC €200,000;

    c.      Awarded interest at the rate of 5% per year on both of these amounts from the date of the Final Award until full payment; and

    d.      Dismissed all of the parties' other claims.

3

7.      A copy of the Final Award is attached to the Honlet Declaration as **Exhibit 5**. The Final Award is in French, the language of the arbitration. A certified translation is attached to the Honlet Declaration as **Exhibit 6**.

## PARTIES

8.      Petitioner is a limited liability company organized under the laws of Delaware located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19081.

9.      Respondent, the Democratic Republic of the Congo, is a foreign state under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.* Respondent may be served through its Minister of Justice, Ministry of Justice, 228 avenue de lemera, Gombe, Kinshasa, Democratic Republic of Congo.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to two statutory bases: first, 28 U.S.C. § 1330(a) and 28 U.S.C. § 1605(a)(6); and second, 9 U.S.C. § 203.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) to confirm an arbitral award against a foreign state provided that the foreign state does not have immunity. Title 28 U.S.C. § 1330(a) states:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief *in personam* with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a).

12.     The Democratic Republic of the Congo is not entitled to immunity because this is an action under 28 U.S.C. § 1605(a)(6) to confirm an arbitration award under the New York

Convention, a treaty providing for the recognition and enforcement of arbitral awards to which the United States is a party.

13.     The Arbitral Award is governed by the New York Convention because: (i) the award arose from a commercial legal relationship between the parties; (ii) there was an agreement in writing to arbitrate any dispute(s) arising from that relationship; (iii) the agreement provided for arbitration proceedings to take place in France, a signatory to the New York Convention; and (iv) at least one of the parties is not an American citizen. *See* 9 U.S.C. § 202.

14.     The Democratic Republic of the Congo is also not entitled to immunity because the Democratic Republic of the Congo expressly waived "any immunity of any kind whatsoever" in the dispute resolution clause of the contract giving rise to liability here.

15.     The second basis for this Court's subject matter jurisdiction is Section 203 of the Federal Arbitration Act, which provides jurisdiction to enforce an arbitration award governed by the New York Convention stating:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203.

16.     This Court has personal jurisdiction over the Democratic Republic of the Congo pursuant to 28 U.S.C. § 1330(b), which provides that personal jurisdiction over a foreign state shall exist as to every claim for relief for which the district court has jurisdiction under 28 U.S.C. § 1330(a) and where service has been made pursuant to 28 U.S.C. § 1608. Petitioner is serving the Democratic Republic of the Congo pursuant to 28 U.S.C. § 1608.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

FACTS

**The Democratic Republic of the Congo attempts to reform**

18.     The Democratic Republic of the Congo's Customs and Excise Office ("OFIDA," as it was then called)[2] was charged by Congolese law with the duty to collect duties, taxes, and fees of a customs and fiscal nature; collect existing and future excise taxes; patrol the borders; investigate and establish customs and excise infractions and violations of the statutes in connection therewith; and train personnel in modern management techniques in the customs and excise field. OFIDA operated under the supervision of the Democratic Republic of the Congo's Finance Minister.

19.     In 2003, OFIDA undertook a customs reform and modernization program with the International Monetary Fund ("IMF").

20.     In 2007, at OFIDA's request, the World Customs Organization ("WCO") conducted a diagnostic mission to, among other things, enhance OFIDA's capabilities. The WCO coordinated with the IMF representatives in the Democratic Republic of the Congo.

21.     In November 2007, as part of a broader report of various economic sectors in the Democratic Republic of the Congo, the IMF concluded that the reform of OFIDA was insufficient.

---

[2] OFIDA is an acronym of the office's name in French: Office des Douanes et Accises.

### The Democratic Republic of the Congo contracts with
### CTC and then breaches the Contract

22.　　In June 2008, the Democratic Republic of the Congo entered into a Technical Assistance Contract (the "Contract") with CTC.

23.　　CTC counted among its principals the consultant who had been responsible for the successful customs reforms that had been executed in Angola and Mozambique.

24.　　Per the terms of the Contract, CTC was to deploy a team of experts to support OFIDA's operations in the field, inspect goods exported and imported, conduct a post-customs clearance audit, and combat customs fraud through investigations and intelligence gathering—with the goals of obtaining an immediate and lasting increase in customs receipts and to transform OFIDA into a modern and efficient customs department consistent with the highest international standards as defined by the WCO.

25.　　The Contract also required CTC to propose an appropriately revised statutory and regulatory framework that would both encourage trade and protect the Congolese state and people.

26.　　The Contract required the Democratic Republic of the Congo to, among other things, make timely payment to CTC and ensure OFIDA cooperated in CTC's efforts.

27.　　The Democratic Republic of the Congo repeatedly failed to meet its financial obligations under the Contract. For example, the Democratic Republic of the Congo failed to make full payment due for even the mobilization payment due to CTC.

28.　　The Democratic Republic of the Congo repeatedly failed to meet its obligation to ensure OFIDA officials cooperated with CTC's efforts. Instead, OFIDA attempted to impede CTC's performance of the Contract. For example, OFIDA refused to assist CTC in fighting corruption within OFIDA.

29.     After repeated efforts to resolve the situation, CTC terminated the Contract on
January 15, 2010. The letter of termination further stated that it constituted notice of a dispute
pursuant to Clause 24 of the Contract.

**The Arbitration**

30.     At Clause 24, the Contract includes an arbitration agreement that provides:

> Any dispute that may arise concerning the formation, performance,
> construction or termination of this Contract shall be first resolved
> amicably by direct negotiations between the two contracting
> Parties.
>
> If at the end of a three (3) month period from the date notice of a
> dispute is given by one party to the other party the two contracting
> parties have not reached an agreement to resolve their dispute,
> either party may submit the dispute to arbitration by an Arbitral
> Tribunal appointed in accordance with the Rules of Arbitration of
> the International Chamber of Commerce (ICC). The Arbitral
> Tribunal shall comprise three arbitrators appointed in accordance
> with said Rules. The seat of arbitration shall be Paris and the
> language of arbitration shall be French. The parties shall comply
> with any arbitration award and, accordingly, the State expressly
> waives any immunity of any kind whatsoever.

31.     A copy of Clause 24 of the Contract is attached to the Honlet Declaration as
**Exhibit 7**. A certified translation of Clause 24 is set out in the certified translation of the Partial
Award at page 10, in **Exhibit 2** to the Honlet Declaration.

32.     On May 31, 2013, CTC submitted to the ICC a request for arbitration against the
Democratic Republic of the Congo.

33.     Both CTC and the Democratic Republic of the Congo nominated arbitrators who
served on the Arbitral Tribunal alongside the Tribunal President, who was appointed by the ICC.

34.     Both CTC and the Democratic Republic of the Congo were represented by
counsel in the arbitration.

35.     The parties agreed to the Terms of Reference, dated March 5, 2014, subject to the ICC's 2012 rules.

36.     In addition to the claims asserted by CTC, the Arbitral Tribunal was presented with certain counterclaims asserted by the Democratic Republic of the Congo.

37.     At CTC's request and after consultation with the parties, the Arbitral Tribunal bifurcated the arbitration. The first phase would decide the merits of CTC's claims and the Democratic Republic of the Congo's counterclaim. The first phase would also include a determination of the amount owed on CTC's invoices.

38.     The Arbitral Tribunal reserved decision on the quantum of CTC's claimed loss of profits and loss of opportunity claims for the second phase. The Democratic Republic of the Congo, given the choice, reserved decision of the quantum related to its counterclaim for the second phase of the arbitration.

39.     On April 7, 2014, CTC submitted its Claim Memorandum and supporting documents.

40.     On June 6, 2014, the Democratic Republic of the Congo submitted its Defense Memorandum and supporting documents.

41.     On August 8, 2014, CTC submitted its Reply Memorandum and supporting documents.

42.     On October 8, 2014, the Democratic Republic of the Congo submitted its Rejoinder and Final Memorandum and final documents.

43.     On October 27, 2014, the Arbitral Tribunal heard testimony from the parties' witnesses and argument at the ICC Hearing Center in Paris. At the request of the Democratic

Republic of the Congo, one of its witnesses was permitted to testify by videoconference. Both parties were permitted the opportunity to cross-examine witnesses.

44.     The parties determined it was not necessary to submit post-hearing memoranda.

45.     The parties submitted their Costs and Fees Memoranda on November 4 and December 3, 2014.

46.     The Arbitral Tribunal formally closed the proceedings on January 23, 2015.

**The Award**

47.     On July 22, 2015, the Arbitral Tribunal rendered the Partial Award.

48.     The Arbitral Tribunal denied the Democratic Republic of the Congo's claim that the Contract was void for non-compliance with the contractual provisions or statutes governing public procurement contracts. Partial Award ¶¶ 107-18.

49.     The Contract was not void as a matter of a public policy against corruption because, as the Arbitral Tribunal specifically noted, ***the Democratic Republic of the Congo had stated and confirmed that there was no corruption or attempted corruption giving rise to the Contract***. *Id.* ¶ 111, 113.

50.     The Contract was not void under French law because the parties did not intend to apply French public procurement rules to public procurement contracts in the Democratic Republic of the Congo. *Id.* ¶ 114. Moreover, French law considers finding a contract to be void to be an exceptional measure, requiring a weighing of the general interests involved. *Id.* ¶ 115. In this case, however, the Arbitral Tribunal found, ***the highest authorities of the Democratic Republic of the Congo approved the contract at issue in a transaction that was encouraged by international financial institutions***—a set of facts never before submitted to French courts and

one which the French courts would find difficult to judge on the basis of the public interest in the Democratic Republic of the Congo. *Id.*

51.     The Contract was not void as violative of the Congolese Public Procurement Code because the Democratic Republic of the Congo had failed to show that a competitive tender process was required in this instance. *Id.* ¶ 116. Congolese law permits contracts without such a process where there are insufficient qualified competitors, and the Democratic Republic of the Congo had failed to show that the Democratic Republic of the Congo would have attracted any qualified tender other than CTC. *Id.* ¶ 117. Moreover, the Contract's recitals included a representation that the Democratic Republic of the Congo had decided to enter into the Contract with CTC after consulting with various companies that specialize in the reform of customs and tax departments. *Id.* ¶ 118.

52.     The Arbitral Tribunal likewise denied the Democratic Republic of the Congo's arguments that the Contract was the result of fraud. *Id.* ¶¶ 119-29. There was no fraud by non-disclosure as the Democratic Republic of the Congo had at all times the information necessary to it and had at its disposal experts from the WCO and IMF to counsel it regarding the Contract. *Id.* ¶ 120. The Democratic Republic of the Congo further failed to prove any deceitful acts by CTC. *Id.* ¶¶ 121-27. Further, any right to avoidance premised on fraud would have been waived by the Democratic Republic of the Congo's repeated requests to CTC to postpone CTC's decision to terminate the Contract, which allowed the Democratic Republic of the Congo to continue receiving the benefits of the Contract. *Id.* ¶ 129.

53.     The Arbitral Tribunal likewise found that the Democratic Republic of the Congo had failed to show any basis for reformation of the Contract. *Id.* 133-39. In response to the Democratic Republic of the Congo's allegation that the Contract was imbalanced because CTC's

services were minimal, the Arbitral Tribunal found that CTC had deployed up to 60 consultants in the Democratic Republic of the Congo and further noted that until CTC terminated the Contract, the Democratic Republic of the Congo had never given notice to CTC of any asserted breach. *Id.* ¶ 137.

54.     The Arbitral Tribunal next turned to the parties' claims as to performance.

55.     The Arbitral Tribunal found that the Democratic Republic of the Congo had breached its payment obligations under the Contract. *Id.* ¶¶ 150-58. The Arbitral Tribunal found that prior to CTC's termination of the Contract, the Democratic Republic of the Congo had never disputed the unpaid invoices and that the Democratic Republic of the Congo did not dispute that it had not paid the amounts claimed by CTC. *Id* ¶ 152.

56.     The Arbitral Tribunal also found that the Democratic Republic of the Congo had breached its obligation to ensure OFIDA's cooperation with CTC. *Id.* ¶¶ 159-63.

57.     The Arbitral Tribunal found that the Democratic Republic of the Congo failed to prove any of the breaches it alleged against CTC. *Id.* ¶¶ 164-78.

58.     The Arbitral Tribunal then awarded damages to CTC for the unpaid invoices in the following amounts:

      a.     Monthly fixed remunerations in the amount of $49,064,000;

      b.     Variable remunerations in the amount of $39,540,439; and

      c.     The balance of a certain mobilization indemnity in the amount of $3,091,908.72.

For a total of ***$91,696,347***, together with interest at the rate of 1.5% per month on each invoice as from five days after its presentation until full payment. *Id.* ¶ 239.

59.     The Arbitral Tribunal further awarded damages to CTC for demobilization indemnity and repatriation allowance of its personnel in the amount of $*3,750,000* with interest at the rate of 1.5% per month from January 15, 2010 until full payment. *Id.*

60.     The Arbitral Tribunal also deferred decision regarding the costs of arbitration until the Final Award. *Id.*

61.     On November 19, 2015, the Arbitral Tribunal rendered the Addendum, which corrected a calculation error in the Partial Award by awarding to CTC the additional amount of *$853,751*. Addendum, at Ruling Clause.

62.     On November 27, 2015, CTC informed the Arbitral Tribunal that it waived proceeding with the second phase of the arbitration and proposed a procedural calendar for the determination of the allocation of the arbitration expenses.

63.     On December 2, 2015, Democratic Republic of the Congo stated it had no observations regarding the proposed procedural calendar.

64.     After considering the briefing submitted by the parties, on February 22, 2016, the Arbitral Tribunal rendered the Final Award. Final Award, ¶¶ 17-23, 48. The Final Award:

        a.      Allocated the responsibility for arbitral fees as between the parties, ordering that the Democratic Republic of the Congo pay to CTC *$162,500* in accordance with that allocation;

        b.      Decided liability for legal fees, ordering the Democratic Republic of the Congo to pay to CTC *€200,000*;

        c.      Awarded interest at the rate of 5% per year on both of these amounts from the date of the Final Award until full payment; and

        d.      Dismissed all the parties' other claims. *Id.* ¶ 48.

**CLAIMS FOR RELIEF**
**9 U.S.C. § 207**

**First Claim for Relief**
**(Confirmation of the Awards' Monetary Relief)**

65.     Petitioner repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates them herein by reference.

66.     The United States is a contracting party to the New York Convention.

67.     The New York Convention has been implemented in the United States by Chapter Two of the Federal Arbitration Act.

68.     The Partial Award, Addendum, and Final Award are governed by the New York Convention because they were rendered in France, another contracting party, and satisfy the requirements of Section 202 of the Federal Arbitration Act. *See* 9 U.S.C. § 202.

69.     The Federal Arbitration Act provides that the "court ***shall*** confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added).

70.     None of the grounds available for refusal or deferral of recognition and enforcement of an award specified in the New York Convention apply to the Partial Award, the Addendum, and the Final Award.

71.     Therefore, the Partial Award, the Addendum, and the Final Award should be confirmed pursuant to 9 U.S.C. § 207 and judgment in the United States should be entered for the monetary relief awarded by the Tribunal.

**Second Claim for Relief**
**(Prejudgment Interest on Amounts Due)**

72.     Petitioner repeats and re-alleges each and every allegation contained in in the foregoing paragraphs and incorporates them herein by reference.

14

73.     The Partial Award and Final Award include interest at the rate of 1.5% per month on the amount of each invoice as from five days after its presentation until full payment.

74.     The Addendum modifies the amounts due and subject to interest pursuant to the Partial Award, which modification is confirmed by the Final Award.

75.     The Partial Award and Final Award include interest at the rate of 1.5% per month on the demobilization costs of $3,750,000 from January 15, 2010 until full payment.

76.     The Final Award includes interest at the rate of 5% per year on the arbitral fees of $162,500 and the legal fees of €200,000 from the date of February 22, 2016 until full payment.

77.     Therefore, the Court should award Petitioner prejudgment interest on the amounts awarded under the Partial Award, the Addendum, and the Final Award from the dates specified in said arbitral awards until the entry of judgment at the rates so specified.

**WHEREFORE, Petitioner respectfully petitions the Court for an order:**

(a)     confirming the Partial Award, Addendum, and Final Award, including the monetary relief granted therein and entering judgment in favor of Petitioner and against Respondent in euros and U.S. dollars in accordance with those awards;

(b)     awarding prejudgment interest as specified in those awards;

(c)     awarding postjudgment interest as specified in those awards; and

(d)     granting such other and further relief as the Court deems just and proper.

Dated: June 14, 2018
Washington, D.C.

Respectfully submitted,

DENTONS US LLP

*/s/ William T. O'Brien*
William T. O'Brien (D.C. Bar No. 450891)
John W. Lomas, Jr. (D.C. Bar No. 976555)
Daniel Morris (D.C. Bar No. 1018371)
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 496-7500
Facsimile: (202) 496-7756
william.obrien@dentons.com
john.lomas@dentons.com
daniel.morris@dentons.com