# EXHIBIT 5



**INTERNATIONAL COURT OF ARBITRATION®** | **INTERNATIONAL CENTRE FOR ADR** | LEADING DISPUTE RESOLUTION WORLDWIDE

# SENTENCE

**INTERNATIONAL CHAMBER OF COMMERCE (ICC)**
**INTERNATIONAL COURT OF ARBITRATION**

33-43 avenue du Président Wilson, 75116 Paris, France
T +33 (0)1 49 53 29 05  F +33 (0)1 49 53 29 33
E arb@iccwbo.org   www.iccarbitration.org

**COUR INTERNATIONALE D'ARBITRAGE DE LA CCI**

AFFAIRE No. 19515/MCP/DDA

CUSTOMS AND TAX CONSULTANCY LLC (CTC)

(Etats-Unis)

c/

REPUBLIQUE DEMOCRATIQUE DU CONGO

(RDC)

Ce document est une copie certifiée conforme à l'original de la Sentence Finale rendue conformément au Règlement d'arbitrage de la Cour internationale d'arbitrage de la CCI.

**SENTENCE FINALE**

## Arbitrage CCI n° 19515/MCP/DDA

Entre :

**CUSTOMS AND TAX CONSULTANCY LLC (ETATS-UNIS) (CTC)**

Demanderesse

C /

**REPUBLIQUE DEMOCRATIQUE DU CONGO (RDC)**

Défenderesse

CERTIFIED TRUE COPY OF THE ORIGINAL
PARIS, 30 May 2018

Alexander G. FESSAS
Secretary General
ICC International Court of Arbitration

1

| LES PARTIES |
|---|

1. Les parties à l'arbitrage sont les suivantes :

**Demanderesse:**

**CUSTOMS AND TAX CONSULTANCY LLC,** Corporation Trust Center, 1209, Orange Street, Wilmington, Delaware, 19081, Etats-Unis (CTC).
Ci-après dénommée " CUSTOMS", " CTC " ou " la Demanderesse ".

Représentée par :

**Jean-Christophe HONLET**
**Ioana PETCULESCU**
**Augustin BARRIER**
DENTONS
5, boulevard Malesherbes
75008 – Paris
France
Tel : + 33 1 42 68 48 00
Fax : + 33 1 42 68 15 45
Courriels :
jeanchristophe.honlet@dentons.com  ioana.petculescu@dentons.com
augustin.barrier@dentons.com

Cette Société a été constituée au Delaware, en janvier 2008, aux fins du Contrat avec la REPUBLIQUE DEMOCRATIQUE DU CONGO, par M. et Mme YAGHI (80 %), M. OUTHWAITE (13,5 %) et M. BIDWELL (6,5 %).

**Défenderesse :**

**REPUBLIQUE DEMOCRATIQUE DU CONGO,** c/o Monsieur le Ministre des Finances, boulevard du 30 juin, Gombe, Kinshasa, REPUBLIQUE DEMOCRATIQUE DU CONGO (REPUBLIQUE DEMOCRATIQUE DU CONGO).
Ci-après dénommée "REPUBLIQUE DEMOCRATIQUE DU CONGO", ou "la Défenderesse".

Représentée par :

**Nicolas ANGELET**
**Aimery de SCHOUTHEETE**
LIEDEKERKE WOLTERS WAELBROECK KIRKPATRICK
boulevard de l'Empereur, 3 Keizerslaan
1000 Bruxelles
Belgique



2

Tel: +32 2 551 14 72
Fax : + 32 2 551 14 54
Courriels:
a.deschoutheete@liedekerke.com
n.angelet@liedekerke.com

La REPUBLIQUE DEMOCRATIQUE DU CONGO agit par son Ministre des Finances.

## LE TRIBUNAL ARBITRAL

2. Le Tribunal Arbitral est ainsi constitué :

**Bernard HANOTIAU**
HANOTIAU & VAN DEN BERG
IT Tower (9th Floor)
480, avenue Louise B9
1050 Bruxelles
Belgique
Tel : +32 2 290 39 00
Fax : +32 2 290 39 39
Courriel : bernard.hanotiau@hvdb.com
Arbitre désigné par la Demanderesse.

**Catherine KESSEDJIAN**
19, villa Seurat
Boîte/Porte B
75014 - Paris
France
Tel : + 33 1 43 20 07 75
Fax : + 33 1 43 20 09 13
Courriel : CKarbitre@outlook.fr
Arbitre désigné par la Défenderesse.

Président :

**Ibrahim FADLALLAH**
61, rue la Boétie
75008 - Paris



3

France
Tel : + 33 1 40 76 00 40
Fax : + 33 1 40 76 02 50
Courriel : ibrahim.fadlallah@wanadoo.fr

Désignés et confirmés comme il est dit dans la Sentence Partielle du 22 juillet 2015 (la sentence).

3. **Le Conseiller à la CCI en charge du dossier est :**

**Mme Diamana Diawara**
Conseiller
Cour Internationale d'Arbitrage de la CCI
33-43, avenue du Président Wilson
75116 - Paris,
France
Tel : +33 1 49 53 29 51 / +33 1 49 53 29 28
Fax :   +33 1 49 53 57 75
Courriel :   ica2@iccwbo.org



4

## PROCEDURE

4. Le Tribunal arbitral est saisi d'un litige né à la suite de la résiliation d'un Contrat d'Assistance Technique conclu le 5 juin 2008 entre la Société CUSTOMS AND TAX CONSULTANCY LLC et la REPUBLIQUE DEMOCRATIQUE DU CONGO. Ce contrat avait pour but la *"maximisation des recettes fiscales et douanières de l'Etat"* par la restructuration de l'OFFICE des DOUANES et ACCISES (OFIDA) en vue d'une plus grande efficacité dans le recouvrement des recettes douanières.

L'article 24 du Contrat d'Assistance Technique stipule, sous le titre *"Règlement des litiges"*:

> *"Tout litige pouvant naître de la formation, de l'exécution, de l'interprétation ou de la résiliation du présent Contrat sera réglé en priorité à l'amiable par voie de négociations directes entre les deux Parties contractantes.*
> *Si après l'expiration d'un délai de trois (3) mois à compter de la date de la notification d'un litige par une partie à l'autre partie, les deux parties contractantes n'ont pas trouvé un accord pour régler le différend qui les oppose, celui-ci sera alors soumis par la partie la plus diligente à l'arbitrage d'un Tribunal arbitral constitué conformément au Règlement d'arbitrage de la Chambre de Commerce Internationale (CCI). Le Tribunal arbitral comprendra trois arbitres nommés conformément à ce Règlement. Le siège de l'arbitrage sera Paris et la langue de l'arbitrage sera le français. Les parties se conformeront à toute sentence arbitrale et, à ce titre, l'Etat renonce expressément à toute immunité de quelque nature que ce soit."*

L'article 23 prévoit que :

> *"Le présent contrat, la signification et l'interprétation de ses termes et dispositions, et les relations s'établissant entre les Parties seront régis par le droit français."*

5. Le 22 juillet 2015, le Tribunal Arbitral composé de :

- M. le Professeur HANOTIAU, arbitre proposé par la société CUSTOMS AND TAX CONSULTANCY LLC (Etats-Unis), Demanderesse ;
- Mme le Professeur KESSEDJAN, arbitre proposé par la REPUBLIQUE DEMOCRATIQUE DU CONGO, Défendeur ;
- M. le Professeur FADLALLAH, Président, désigné par la Cour Internationale d'Arbitrage de la CCI ;



5

a rendu, sous l'égide de la Cour d'arbitrage de la CCI une Sentence Partielle dans la procédure 19515/MCP. La Sentence Partielle a été notifiée aux Parties le 22 juillet 2015 et reçue par elles le 23 juillet 2015.

6. Le Tribunal arbitral se réfère à la partie procédurale de la Sentence Partielle du 22 juillet 2015 et l'incorpore dans la présente Sentence Finale.

7. Par ladite Sentence Partielle, le Tribunal a décidé ce qui suit :

***Sur les demandes de CTC***

- DIT ET JUGE que la RDC a contrevenu à ses obligations contractuelles envers la société CTC ;
- CONSTATE la résiliation du contrat aux torts de la RDC ;
- CONDAMNE la RDC à payer à la société CTC au titre des factures impayées :
    - les rémunérations fixes mensuelles, soit 49.064.000 USD ;
    - les rémunérations variables, soit 39.540.439 USD ;
    - le solde de l'indemnité de mobilisation, soit 3.091.908,72 USD ;
  
  ce qui représente un total de 91.696.347 USD ;

  avec les intérêts au taux de 1,5 % par mois sur chaque facture à dater de cinq jours après sa présentation jusqu'à parfait paiement.

- CONDAMNE la RDC à payer à la société CTC l'indemnité de démobilisation et de rapatriement de son personnel, soit 3.750.000 USD, avec les intérêts de 1,5 % par mois à dater du 15 janvier 2010 jusqu'à parfait paiement ;
- REJETTE la demande de capitalisation des intérêts ;
- REPORTE à la sentence finale les demandes de condamnation de la RDC à payer à la société CTC :
    - tous dommages-intérêts au titre du gain manqué par CTC jusqu'à la date d'expiration normale du Contrat, le 5 juin 2013 et, en tout état de cause, au titre de la perte de chance à ce titre ;
    - tous dommages-intérêts au titre de la perte de chance de renouvellement du Contrat postérieurement au 5 juin 2013 ;

- tous autres dommages-intérêts correspondant à tous autres préjudices causés par son fait qui seraient, le cas échéant, démontrés ;
- la demande d'accorder à CTC toute autre forme de réparation que le Tribunal jugerait appropriée.

### *Sur les demandes de la RDC :*

- REJETTE la demande d'annulation et de révision du Contrat et, en conséquence :
    - les demandes de la RDC de déclarer intégralement infondées les demandes de la société CTC ;
    - la demande de remise de la RDC dans la situation antérieure au Contrat et le paiement par la société CTC de la somme de 28.567.181,28 USD, subsidiairement de 2.171.339,41 USD, et plus subsidiairement qu'il limite la condamnation de la RDC à payer à CTC un montant maximal de 8.743.659,44 USD ;
- REJETTE la demande de déclaration de non-exécution par la société CTC de ses obligations contractuelles ;
- REJETTE comme prématurée la demande de dire pour droit que la société CTC n'est pas fondée à obtenir d'indemnité au titre de la perte d'une chance ;
- REJETTE la demande de réduction des intérêts moratoires ;

8. Il a en outre reporté à la sentence finale la décision sur les coûts de l'arbitrage, dit qu'il rendra une ordonnance organisant la suite de la procédure et rejeté toutes les autres demandes des Parties



7

9. Une seconde phase de l'arbitrage devait porter sur la demande de CTC relative au manque à gagner et à la perte de chance.

10. Par courrier du 21 août 2015, la Demanderesse, CTC, a adressé au Secrétariat Général de la Cour Internationale de la CCI une "demande relative à la correction, l'interprétation et la rectification d'une omission de statuer" concernant la sentence partielle 19515/MCP notifiée le 22 juillet 2015.

11. La RDC a répondu à cette demande, après prorogation du délai, par un mémoire en date du 22 septembre 2015.

12. CTC a présenté une réplique le 29 septembre 2015 et la RDC une duplique le 6 octobre 2015.

13. L'Addendum à la Sentence Partielle en date du 19 novembre 2015 a été notifié aux Parties le 20 novembre 2015.

14. Le Tribunal, statuant sur la requête de CTC en correction, interprétation et rectification d'une omission de statuer relativement à sa rémunération variable et à la capitalisation des intérêts, a abouti à l'Addendum du 19 novembre 2015 qui a décidé que : (i) la sentence rendue le 22 juillet 2015 comporte une erreur de calcul qui sera corrigée en allouant à CTC un montant complémentaire de 853.751.USD, (ii) et que cette décision corrige le § 204 à la page 102 de la sentence partielle. Il a en outre (iii) réservé les frais, (iv) rejeté toute autre demande et (v) dit que le présent addendum sera considéré comme un addendum à la sentence partielle du 22 juillet 2015.

15. Le 12 novembre 2015, la Cour a prolongé le délai pour rendre la sentence finale jusqu'au 31 décembre 2015(article 30(2) du Règlement).



8

16. Par une lettre du 25 novembre 2015, le Tribunal a demandé aux Parties suite à la notification de l'Addendum à la Sentence Partielle, de lui faire parvenir un calendrier procédural commun pour la seconde phase de l'arbitrage, ou, à défaut, une proposition de calendrier propre à chaque Partie.

17. Le 27 novembre 2015, la Demanderesse a informé le Tribunal Arbitral qu'elle renonçait à poursuivre la procédure et a proposé un calendrier procédural relatif aux frais de l'arbitrage. La Défenderesse a pris acte de la décision de la Demanderesse le 2 décembre 2015 et a indiqué ne pas avoir d'observations sur le calendrier procédural prévu.

18. Le Tribunal a confirmé le calendrier procédural relatif aux frais de l'arbitrage proposé par les Parties et a indiqué qu'une nouvelle audience ne semblait donc pas nécessaire.

19. Les Parties ont soumis, le 11 décembre 2015, leurs mémoires sur les frais et coûts de l'arbitrage.

20. Par courriels des 15 et 16 décembre 2015, le Tribunal arbitral a demandé à la RDC de clarifier ses demandes quant aux frais et coûts de l'arbitrage.

21. Le 18 décembre 2015, la RDC a transmis une réponse relative à ses demandes en matière de coûts et frais.

22. Par un courriel du même jour, CTC a déclaré qu'elle n'entendait pas répondre à la lettre de la RDC.

23. Le 21 décembre 2015, la RDC a commenté le mémoire sur frais de CTC.



9

24. Le 10 décembre 2015, la Cour a prolongé le délai pour rendre la sentence finale jusqu'au 29 février 2016 (article 30(2) du Règlement).

## LA DEMANDE DE CTC AU FOND

25. Par une lettre du 27 novembre 2015, CTC a informé la Tribunal Arbitral de sa volonté de ne pas donner suite à la seconde phase de l'arbitrage en ce qui concerne le gain manqué et la perte de chance et lui a demandé de rendre une sentence finale sur les frais de l'arbitrage en ces termes :

   « *CTC souhaite vous informer de sa volonté de ne pas donner suite à la seconde phase de l'arbitrage en ce qui concerne le gain manqué et la perte de chance, et renonce par là-même à ces deux demandes. Elle prie en conséquence le Tribunal de rendre une sentence finale sur les frais de l'arbitrage (...)* ».

26. CTC a renoncé, par là même, à ces deux demandes. Elle demande au Tribunal de rendre une sentence finale sur les frais de l'arbitrage.

27. Par une lettre du 2 décembre 2015, la RDC « *a pris acte du fait que la Demanderesse entend ne pas donner suite à la seconde phase de l'arbitrage, qui concerne le gain manqué et la perte de chance, et renonce par là même, définitivement et irrévocablement à toutes les demandes qui s'y attachent et sollicite en conséquence du Tribunal arbitral de bien vouloir rendre une sentence finale sur les frais d'arbitrage* ».

28. La RDC demande au Tribunal « *que celui-ci prenne acte, dans la sentence finale à intervenir, de la décision de la Demanderesse et de son désistement d'action en ce qui concerne la seconde phase de la procédure et toutes les demandes qui s'y attachaient* ».



## SUR LES FRAIS ET COÛTS

### DEMANDE DE CTC

29. CTC transmet au Tribunal un tableau récapitulatif des frais et coûts de l'arbitrage. Elle réclame les honoraires et débours des avocats, qui s'élèvent à 894.509,18 €, plus 214.986,98 USD (certaines factures ayant été émises en euros et d'autres en dollars), les frais administratifs de la CCI de 325.000 USD et les autres frais raisonnables de 11,028 €.

30. Elle précise que sur les deux notes d'honoraires qui ont été émises depuis le 24 novembre 2014 (de 11.517 € et 146.040,50 €), date de la première soumission sur les frais, elle ne réclame que 110.000 €, qui correspondent aux frais de l'arbitrage stricto sensu, la différence correspondant à la phase post-arbitrale. Et CTC soutient que cette dernière demande est justifiée, dès lors que la demande de correction de la sentence a partiellement abouti, fût-ce pour un montant inférieur à celui demandé.

31. CTC demande au Tribunal que les frais exposés dans cette procédure *« soient mis intégralement à la charge de la République démocratique du Congo et que CTC en soit indemnisée par celle-ci »*.

32. Elle précise que ses observations en date des 24 et 27 novembre 2014 (lettres portant état de frais après la première phase de la procédure, citant les articles 37-1 et 37-4 du Règlement et soutenant que la charge des frais doit être supportée par la partie qui succombe) *« demeurent valables et font partie intégrante des présentes, qui n'en sont qu'une actualisation »*. Elle ajoute que sa demande de remboursement est *« d'autant plus justifiée que, depuis ses précédentes observations, la RDC a été reconnue comme responsable de multiples violations du Contrat et condamnée à indemniser CTC par la sentence partielle du 22 juillet 2015. »*

33. CTC demande, en outre, au Tribunal, *« de juger que les sommes dont le Tribunal ordonnerait le remboursement porteront intérêt au taux contractuel figurant à l'article*

11

*neuvième des Conditions financières ou, en toute hypothèse, à tout autre taux que le Tribunal jugerait applicable, à compter de la date de la sentence sur les frais. ».*

34. Tout en affirmant qu'elle n'entend pas répondre à la lettre des Conseils de la RDC, CTC a intégralement contesté les demandes sur frais et coûts de la RDC formulées le 18 décembre 2015 et a demandé au Tribunal de bien vouloir rendre sa sentence sur les frais de l'arbitrage en fonction des écritures déposées par les parties à ce jour.

### DEMANDE DE LA RDC

35. En ce qui concerne le décompte des frais et coûts de l'arbitrage, la Défenderesse établit une distinction entre les frais et honoraires afférents à la première phase de la procédure arbitrale, qui a débouché sur la Sentence Partielle du 27 juillet 2015 d'une part, et les frais et honoraires afférents à la défense de la RDC dans le cadre de la requête en rectification et interprétation introduite par la Demanderesse subséquemment, d'autre part.

36. Ainsi, les montants relatifs à la première phase s'élèvent à 515 000 € d'honoraires et 22.045,08 € de frais et ceux de la seconde phase, qui n'ont pas encore fait l'objet d'un état adressé à la RDC, à 53.000 € d'honoraires, sans frais spécifiques.

37. La RDC a réitéré les arguments formulés dans sa lettre du 27 novembre 2014 et contesté les arguments de CTC. Pour la RDC, CTC n'a en réalité obtenu gain de cause que dans une mesure très limitée et a succombé sur certains points importants, n'obtenant ainsi qu'une fraction égale à 37% (selon les calculs de la RDC), de ce qu'elle réclamait. La RDC demande au Tribunal que les frais de chaque Partie, afférents à la première phase de l'arbitrage, soient laissés à la charge de la Partie qui les a engagés.

38. Les frais de la RDC afférents à sa défense dans le cadre de la requête de CTC en rectification et interprétation de la sentence doivent être intégralement mis à la charge de CTC car la seule victoire obtenue par cette dernière dans ce cadre est

12

minime par rapport à ce qu'elle réclamait, tant en termes financiers qu'en terme de travail d'argumentation juridique. Et si le Tribunal devait condamner la RDC à supporter une partie des frais de CTC, il devrait en déduire 10% correspondant aux frais postérieurs à la sentence, et en déduire également 53 000 € relatifs aux frais exposés la RDC pour la demande en rectification

39. Par ailleurs, la RDC soutient que les frais déclarés par CTC sont déraisonnables, disproportionnés et injustifiés. Elle constate que les frais de la RDC s'élèvent à la moitié seulement des frais réclamés par CTC, alors que les Parties ont été confrontées à un travail juridique équivalent, et de même complexité. Elle expose qu'il n'y a pas lieu de condamner la RDC à supporter les frais de CTC, même en partie.

40. Si le Tribunal ne devait pas suivre les demandes de la RDC et opter pour répartition différente des frais, la RDC soutient qu'il conviendrait à tout le moins de réduire substantiellement le montant des frais de CTC à prendre en compte, par exemple en ne retenant qu'une proportion raisonnable de 60% des frais déclarés par CTC

41. De même la RDC, se référant à l'article 37-1 du Règlement, appelle le Tribunal à rejeter la demande de CTC que les frais dont le remboursement serait ordonné soient porteurs d'intérêts au taux contractuel de l'article 9 des conventions financières.

42. La RDC soutient également qu'il convient de refuser à CTC tout remboursement des frais réclamés avant l'introduction de la demande d'arbitrage et relatifs à la préparation de celle-ci (Lettre de CTC du 27 novembre 2014) car il ne s'agit pas de frais d'arbitrage au sens de l'article 37-1 du Règlement, qui parle de frais exposés par les Parties seulement « pour leur défense à l'occasion de l'arbitrage ». Ces frais ne doivent donc, en aucun cas, être mis à la charge de la RDC, même en partie. Et si le Tribunal devait condamner la RDC à supporter une partie des frais de CTC, il conviendrait d'en déduire 27%, à savoir les frais correspondant aux factures d'honoraires émises entre le 30 juin 2009 et le 26 mars 2013.



13

## DECISION DU TRIBUNAL

### I. Sur la renonciation de CTC à la seconde phase de l'arbitrage

43. Le Tribunal arbitral prend acte du désistement d'action de la Demanderesse en ce qui concerne la seconde phase de la procédure et de sa renonciation irrévocable et définitive aux demandes relatives au gain manqué et à la perte de chance qui y sont attachées, ainsi que de l'accord de la Défenderesse sur ce désistement et cette renonciation.

### II. Sur les frais

44. Le Tribunal estime que les frais ne doivent pas être répartis selon le pourcentage de succès. En effet, la question essentielle est de savoir si une partie a dû recourir à l'arbitrage pour réaliser ses droits. Le montant des demandes a une incidence limitée, vu le tarif fortement dégressif de la CCI et le mode de rémunération des avocats.

45. Le Tribunal tient de l'article 37 du Règlement le pouvoir discrétionnaire de répartir les coûts de l'arbitrage. En l'espèce, le Tribunal tient compte de l'attitude insuffisamment coopérative de la RDC durant l'exécution du contrat, du non-paiement par celle-ci de la redevance due et de l'obligation où s'est trouvée CTC de recourir à l'arbitrage, pour laisser à la charge de CTC le quart des frais d'arbitrage de la CCI (soit 162.500 USD) et limiter à 200.000 € la participation de la RDC aux autres frais légaux, bien supérieurs, de CTC, et cela sans distinction entre la première phase et la procédure en rectification.

46. CTC demande les intérêts des montants qui lui sont attribués sur le coût de l'arbitrage au taux contractuel, ou « à tout autre taux que le Tribunal jugerait applicable, à compter de la date de la sentence sur les frais ». La RDC s'y oppose.
Le Tribunal refuse d'appliquer le taux contractuel car il ne s'agit pas d'une créance contractuelle directe. En revanche, il estime qu'un taux de 5% l'an est approprié et doit



14

courir à dater de la présente sentence. L'allocation d'intérêts tient compte de ce que les frais ont été avancés, et est de nature à accélérer le remboursement.

Ces montants porteront donc intérêt comme il est dit au dispositif.

47. Tous autres frais légaux seront supportés par la Partie qui les a engagés.

## DISPOSITIF



15

## Par ces motifs,

48. Le Tribunal,

   (1) Donne acte du désistement d'action de la Demanderesse en ce qui concerne la seconde phase de la procédure et de sa renonciation irrévocable et définitive aux demandes relatives au gain manqué et à la perte de chance qui y sont attachées, ainsi que de l'accord de la Défenderesse sur ce désistement et cette renonciation ;

   (2) Dit à la majorité que les frais CCI fixés par la Cour à 650.000 USD devront être supportés pour le quart par CTC et pour les trois-quarts par la RDC ; condamne la RDC à payer à CTC la somme de 162.500 USD, avec intérêt au taux de 5% l'an, à dater de la présente Sentence Finale et jusqu'à complet paiement ;

   (3) Dit à la majorité que la RDC contribuera, à hauteur de 200 000 €, aux frais légaux de CTC ; l'y condamne, avec intérêt au taux de 5% l'an, à dater de la présente Sentence Finale et jusqu'à complet paiement ;

   (4) Dit que tous autres frais légaux seront supportés par la Partie qui les a engagés ;

   (5) Rejette toutes autres demandes des Parties.



16

Lieu de l'arbitrage : Paris (France)

Date: 22/2/2016

Bernard HANOTIAU
Co-arbitre

Catherine KESSEDJIAN
Co-arbitre

Ibrahim FADLALLAH
Président



CERTIFIED TRUE COPY OF THE ORIGINAL
PARIS, 30 May 2018

Alexander G. FESSAS
Secretary General
ICC International Court of Arbitration

17