UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CUSTOMS AND TAX CONSULTANCY LLC, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> THE DEMOCRATIC REPUBLIC OF THE ) <br> CONGO, ) <br> ) <br> ) <br> Respondent. ) | Civil Case No. 18-1408 (RJL) <br><br> **FILED** <br> SEP 2 3 2019 <br> Clerk, U.S District & Bankruptcy <br> Courts for the District of Columbia |

## MEMORANDUM OPINION
(September _16_, 2019) [Dkt. ##s 1, 11]

Before the Court is the petitioner's Motion for Default Judgment [Dkt. #11] and its Petition to Confirmation Arbitration Award and to Enter Judgment ("Pet.") [Dkt. #1] under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330, 1441(d), 1602 *et seq.* This is an action by Customs and Tax Consultancy LLC ("CTC" or "the petitioner") against the Democratic Republic of the Congo ("the DRC"), to confirm an arbitral award in accordance with the United States Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. 201 et seq., also known as the "New York Convention." As the petitioner has satisfied the jurisdictional and procedural requirements for confirmation of its claimed arbitral award, the Court GRANTS the petitioner's motion for default judgment and its petition to confirm the award.

1

## BACKGROUND

In 2008, the DRC and CTC entered into a Technical Assistance Contract ("the Contract") under which the DRC hired CTC to assist in auditing, reforming, and modernizing the DRC's customs agency, OFIDA.[1] Pet. ¶¶ 18–25; Decl. of Jean-Christophe Honlet ("Honlet Decl."), Pet. Ex. A [Dkt. #1-1] ¶ 13; Award of July 22, 2015 ("Translated Partial Award"), Honlet Decl. Ex. 2 [Dkt. # 1-2] at 21–28 ¶¶ 57, 60–66. Under Clause twenty-four of the Contract:

> Any dispute that may arise concerning the formation, performance, construction or termination of this Contract shall be first resolved amicably by direct negotiations between the two contracting Parties.
>
> If at the end of a three (3) month period from the date notice of a dispute is given by one party to the other party the two contracting parties have not reached an agreement to resolve their dispute, either party may submit the dispute to arbitration by an Arbitral Tribunal appointed in accordance with the Rules of Arbitration of the International Chamber of Commerce (ICC). The Arbitral Tribunal shall comprise three arbitrators appointed in accordance with said Rules. The seat of arbitration shall be Paris and the language of such arbitration shall be French. The parties shall comply with any arbitration award and, accordingly, the State expressly waives any immunity of any kind whatsoever.

Pet. ¶ 30; Translated Partial Award at 10 ¶ 4.

On May 31, 2013 CTC submitted a request for arbitration against the DRC to the International Chamber of Commerce ("ICC"). Pet. ¶ 32; Translated Partial Award at 11 ¶ 6. By March 20, 2014, the parties had retained counsel, nominated arbitrators, and agreed to terms of reference, and the Arbitral Tribunal ("the Tribunal") had set a

---

[1] "OFIDA is an acronym of the office's name in French: Office des Douanes et Accises." Pet. at 6 n.2.

procedural timeline. Pet. ¶¶ 33–35, 37; Translated Partial Award at 11–15; ¶¶ 7–20, 23–29. CTC asserted claims and the DRC asserted counterclaims.[2] Pet. ¶ 36; Translated Partial Award at 13 ¶ 16. The parties submitted memoranda and supporting documents over the course of 2014. *See* Pet. ¶¶ 39–42; Translated Partial Award at 15–16 ¶¶ 32–37. On October 27, 2014, the Tribunal heard testimony and argument from both CTC and the DRC at the ICC Hearing Center in Paris. Pet. ¶ 43; Translated Partial Award at 20 ¶ 52. By the end of 2014, both parties had submitted costs and fees memoranda, and the Tribunal closed proceedings on January 23, 2015. Pet. ¶¶ 45–46; Translated Partial Award at 20 ¶¶ 53–54.

On July 22, 2015, the Tribunal rendered the Partial Award. Pet. ¶ 47; Translated Partial Award at 117. The Tribunal rejected the DRC's various arguments that the contract was void and found in favor of CTC on most its claims. *See* Pet. ¶¶ 48–59; Translated Partial Award at 35–114 ¶¶ 73–237. In total, the Partial Award awarded CTC $91,696,347, plus interest, in compensation for various unpaid invoices and $3,750,000, plus interest, in compensation for demobilization, indemnity, and repatriation of its personnel. *See* Pet. ¶¶ 58–59; Translated Partial Award at 115 ¶ 239. Thereafter, on November 19, 2015, the Tribunal rendered an Addendum, correcting a clerical error in the Partial Award and adding $853,751 to the compensation for unpaid invoices. Pet. ¶ 61; Addendum of November 19, 2015 ("Translated Addendum"), Honlet Decl. Ex. 4

---

[2] Although the DRC asserted counterclaims, it decided to postpone litigating those claims until the second phase of what was to be a bifurcated proceeding. *See* Pet. ¶ 38; Translated Partial Award at 15 ¶¶ 31–33. Ultimately, as will be explained below, that second phase did not take place.

3

[Dkt. #1-6] ¶ 27.

CTC ultimately waived the second phase of the arbitration and the DRC did not object, so the Tribunal issued a Final Award allocating arbitration costs and legal fees on February 22, 2016. *See* Pet. ¶¶ 62–64; Final Award of February 22, 2016 ("Translated Final Award"), Honlet Decl. Ex. 6 [Dkt. #1-8] at 9–10 ¶¶ 17–24, 16 ¶ 48. The Final Award ordered the DRC to pay CTC $162,500, plus interest, for its portion of the arbitration fees, and €200,000, plus interest, as compensation for CTC's legal fees. Pet. ¶ 64; Translated Final Award at 16 ¶ 48.

CTC filed its petition to confirm the Partial Award, Addendum, and Final Award on June 14, 2018. *See* Pet. On July 17, 2018, the Clerk of the U.S. District Court for the District of Columbia sent copies of the summons and petition via commercial courier, along with a translation into French, with tracking and signature confirmation, to the DRC's minister of foreign affairs in Kinshasa, pursuant to 28 U.S.C. § 1608(a)(3). *See* [Dkt. ##s 6, 7]. Information from the commercial carrier confirms that the summons and petition were received and signed for on July 23, 2018. *See* [Dkt. #8-1]. Once service had been made, the DRC was required to serve an answer or other responsive pleading within sixty days. 28 U.S.C. § 1608(d). The DRC neither responded, nor entered an appearance. The Clerk of the Court entered default on September 26, 2018. [Dkt. #10]. On November 20, 2018, CTC filed a motion for default judgment. *See* Mot. for Default J. ("Mot.") [Dkt. 11]. Once again, the DRC failed to respond. That motion is now ripe for decision.

## LEGAL STANDARD

A court shall not enter a default judgment against a foreign state "unless the claimant establishes his claim or rights to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This standard "mirrors" Federal Rule of Civil Procedure 55(d), *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017), which provides that default judgment may be entered against the United States "only if the claimant establishes a claim or right to relief by evidence that satisfies that court," Fed. R. Civ. P. 55(d). Both provisions give an unresponsive sovereign some protection against an unfounded default judgment, but neither provision "relieves the sovereign from the duty to defend cases." *Owens*, 864 F.3d at 785.

In evaluating whether a plaintiff has sufficiently established its claim, section 1608(e) "imposes a duty on FSIA courts to not simply accept a complaint's unsupported allegations as true, and obligates courts to inquire further before entering judgment against parties in default." *Firebird Glob. Master Fund II Ltd. v. Republic of Nauru*, 915 F. Supp. 2d 124, 126 (D.D.C. 2013) (internal quotation marks omitted). But the standard does not "require the court to demand more or different evidence than it would ordinarily receive." *Owens*, 864 F.3d at 785. Thus, "[i]n evaluating whether a plaintiff has sufficiently established its claim, courts may accept the plaintiff's 'uncontroverted factual allegations, which are supported by . . . documentary and affidavit evidence.'" *Firebird Glob. Master Fund II Ltd.*, 915 F. Supp. 2d at 126 (quoting *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 49 (D.D.C. 2012)).

5

# DISCUSSION

## 1) The Court has subject matter jurisdiction over this dispute under the FSIA and Federal Arbitration Act.

Before I may consider whether CTC is entitled to a default judgment in this matter, I must first determine whether I have subject matter jurisdiction over this dispute. Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The FSIA allows the enforcement of certain foreign arbitral awards against foreign sovereigns in U.S. courts. Under the FSIA, a "foreign state is presumptively immune from the jurisdiction of United States courts." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). But the FSIA enumerates several exceptions to this immunity. *See generally* 28 U.S.C. § 1605. Among these exceptions is one that applies when a party seeks to confirm certain types of foreign arbitral awards:

> A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards . . . .

28 U.S.C. § 1605(a)(6).

Awards governed by the New York Convention[3] fall within the FSIA's arbitration exception. The New York Convention is a multilateral treaty providing for "the recognition and enforcement of arbitral awards" across international borders. New York Convention Art. I(1). In the United States, Congress has codified the Convention in the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 202 *et seq.*, which provides that any "action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States" and that the "district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy," *id.* § 203. Thus, foreign arbitral awards governed by the New York Convention fall within the FSIA's arbitration exception. *Sterling Merchant Fin. Ltd. v. Republic of Cabo Verde*, 261 F. Supp. 3d 48, 51 (D.D.C. 2017); *see also Creighton Ltd. V. Gov't of State of Qatar*, 181 F.3d 118, 123–24 (D.C. Cir. 1999) ("[T]he New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception." (internal quotation marks omitted)).

The Partial Award, Addendum, and Final Award that CTC seeks to confirm here are governed by the New York Convention. The FAA (and therefore the Convention) applies to an "arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial," unless that relationship is entirely between U.S. citizens and lacks other significant foreign connection. 9 U.S.C. § 202. Thus, the FAA applies when "(1) there is a written agreement; (2) the writing provides for arbitration in

---

[3] Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Dec. 29, 1970, 21 U.S.T. 2517.

the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope." *Africard Co. Ltd. v. Republic of Niger*, 210 F. Supp. 3d 119, 123 (D.D.C. 2016) (internal quotation marks omitted). Most of these requirements were obviously complied with. First, (1) the Contract was in writing. *See* Honlet Decl. ¶ 13; Honlet Decl. Ex. 7 (setting out arbitration provision); Translated Partial Award at 10 ¶ 4 (translating Ex. 7). Next, (2) the Contract provides for arbitration in France, *see* Honlet Decl. Ex. 7; Translated Partial Award at 10 ¶ 4, a signatory of the New York Convention, *see Tatneft v. Ukraine*, 301 F. Supp. 3d 175, 187 (D.D.C. 2018). Further, (4) one party to the Contract was the DRC, a foreign sovereign, and work under the Contract was to be performed primarily within the DRC, so the subject matter is not at all domestic in scope. *See* Pet. ¶¶ 22–25; Partial Award at 10 ¶ 4 ("The purpose of this contract was to 'increase the State's tax and customs receipts' by restructuring the Customs and Excise Office (OFIDA) with a view to achieving greater efficiency in collecting customs revenue." (quoting Contract)).

As to the remaining requirement that (3) the Contract was commercial in nature, it too was readily established even if, perhaps, a bit less obviously. The term "commercial" as used in the New York Convention, though not defined within the Convention, refers to "matters or relationships, whether contractual or not, that arise out of or in connection with commerce." *Belize Social Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 103–04 (D.C. Cir. 2015) (citing Restatement (Third) of U.S. Law of Int'l Commercial Arb. § 1-1 (2012); Restatement (Third) of Foreign Relations Law § 487 cmt.f (1987)). The dispute in this case, which arises out of a service contract between a company and a government

to consult in overhauling the collection of customs duties, is plainly commercial. *Accord Africard Co. Ltd.*, 210 F. Supp. 3d at 124 ("The dispute in this case, which arises out of a service contract between a company and a government to provide biometric and electronic passports . . . clearly 'arise[s] out of or in connection with commerce.'" (quoting *Belize*, 794 F.3d at 104)).

In sum, the arbitral awards CTC seeks to confirm are governed by the New York Convention. As such, they fall within the arbitration exception to the FSIA. So the DRC does not enjoy the protection of sovereign immunity with respect to the confirmation of CTC's arbitral awards. And I have subject matter jurisdiction to decide this dispute.

**2) CTC properly served the DRC.**

I must also ensure that the DRC was put on notice of this suit. The FSIA enumerates the methods a party can use to serve a foreign sovereign with notice of a suit. *See generally* 28 U.S.C. § 1608(a). Among these methods are:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned. . . .

*Id.*

Service in this case must be made under 28 U.S.C. § 1608(a)(3), because there is no evidence that any special arrangements or international conventions apply. CTC's attorney submitted a declaration which states that:

> I hereby certify that on July 23, 2018, service of the summons, complaint and notice of suit, together with a translation of each into French, by DHL, to the head of the ministry of foreign affairs of Respondent the Democratic Republic of the Congo was effected pursuant to the provisions of 28 U.S.C. § 1608(a)(3). The Clerk of the Court has previously certified that such documents were transmitted by DHL Waybill No. 73 9563 7326.[4]

Decl. of Morris [Dkt. #8]. Given this evidence, CTC properly served the DRC under the FSIA.

What's more, there is evidence that the DRC is actually aware of this suit. As one of CTC's attorneys avers:

> On September 7, 2018, I received a letter from Congo's Ministry of Justice acknowledging receipt of the service of process and stating an intent to retain American counsel to represent Congo in this proceeding.

Decl. of O'Brien, Mot. for Default J. Ex. B [Dkt. #11-11] ¶ 7; *see also* Mot. for Default J. Ex. B-11 [Dkt. #11-12] (appearing to be this letter). Despite this apparent intent to retain American counsel, the DRC has not taken any steps to defend this action or respond to CTC's motion for default judgment. In any event, CTC has satisfied the FSIA's service requirements.

---

[4] The Clerk certified that she mailed "One copy of the summons, complaint and notice of suit, together with a translation of each into the official language of the foreign state, by DHL, to the head of the ministry of foreign affairs, pursuant to the provisions of 28 U.S.C. § 1608(a)(3)." Certificate of Mailing [Dkt. #7].

### 3) The Court has personal jurisdiction over this dispute under the FSIA.

I also have personal jurisdiction over the DRC. "[F]oreign sovereigns and their extensively-controlled instrumentalities are not 'persons' under the Fifth Amendment's Due Process Clause—and thus have no right to assert a personal jurisdiction defense." *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 809 (D.C. Cir. 2012). Instead, the FSIA determines whether a court can exercise personal jurisdiction over a foreign sovereign. Under the FSIA, a court can exercise personal jurisdiction with respect to "every claim for relief over which the district courts have [subject matter] jurisdiction . . . where service of process has been made under section 1608." 28 U.S.C. § 1330(b). As I explained above, I have subject matter jurisdiction over this dispute, and CTC properly served the DRC. Therefore, I have personal jurisdiction over the DRC.

### 4) Default judgment is appropriate. CTC's arbitral awards are confirmed.

After a thorough review of the record, I conclude that default judgment in favor of CTC is appropriate. Therefore, I confirm CTC's arbitral awards under the FAA.

Under the FAA, I must "confirm [an arbitral] award unless [I] find[] one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. Article V(1) of the New York Convention lists five such grounds, which may be considered "at the request of the party against whom [the Convention] is invoked":

> (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention Art. V(1). But the party resisting confirmation of an arbitral award "bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies." *Gold Reserve, Inc. v. Bolivarian Repub. of Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015). As the DRC has not even appeared in this matter, it certainly has not carried its burden as to any of these grounds.[5]

The New York Convention contains two further grounds on which I could deny

---

[5] Nor, based on a review of the evidence before me, could the DRC succeed on any of these grounds. (B) is plainly inapplicable because the DRC participated fully in the arbitration, even asserting counterclaims. *See* Pet. ¶¶ 33–36, 38, 40, 42–45; Translated Partial Award at 12–20 ¶¶ 11–13, 26, 35, 37–41, 52. (C) is likewise inapplicable, as the Tribunal's detailed rulings fall squarely within the issues raised by the parties in their submissions. *See generally* Translated Partial Award. (D) is inapplicable because the Tribunal was constituted according to the terms of the parties' agreement. *Compare* Translated Partial Award at 10 ¶ 4 (setting out agreed-upon procedures in arbitration clause), *with* Translated Partial Award at 11–20 (outlining ICC procedures followed by tribunal). Nor is there any indication that (E) applies. As for (A), the DRC claimed before the Tribunal that the Contract was entered into in violation of Congolese and/or French law, but I see no reason to disagree with the Tribunal's well-reasoned conclusions to the contrary. *See* Translated Partial Award at 47–61.

recognition of CTC's arbitral awards that would apply whether the DRC raised them or not:

> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of [the country where enforcement is sought]; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention Art. V(2). Neither of these grounds applies here. First, the subject matter of this dispute—the breach of a contract for services—is commonly settled by arbitration in the United States. Second, "[t]he Supreme Court has recognized an 'emphatic federal policy in favor of arbitral dispute resolution," *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 934 (D.C. Cir. 2007) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), so the enforcement of these awards would not violate public policy.[6]

In sum, I conclude that CTC has established its right to confirm its arbitral awards by satisfactory evidence. Therefore, I will grant the motion for default judgment and the grant the petition to confirm the arbitral awards.

### 5) CTC is entitled to the sums awarded by the Tribunal.

The various awards by the Tribunal in this dispute ordered the DRC to pay CTC

---

[6] Before the Tribunal, the DRC argued that enforcement of the arbitration clause in the Contract would violate international public policy because the lack of competitive bidding in awarding the contract violated international public policy against corruption (although the DRC did not allege that any actual corruption had occurred). *See* Translated Partial Award at 38–40. Based on an examination of the evidence before me, I agree with the Tribunal that in the absence of any actual alleged corruption, no general policy against corruption could have been violated. *See id.* at 50–51.

the following amounts:

- $92,550,098[7] as compensation for unpaid invoices, with interest at the rate of 1.5% per month on each invoice as from five days after its presentation until full payment. *See* Pet. ¶¶ 58, 61; Honlet Decl. ¶¶ 16–17, Translated Partial Award at 115 ¶ 239; Addendum ¶ 27.

- $3,750,000 as compensation for demobilization indemnity and repatriation allowance for personnel, with interest at the rate of 1.5% per month from January 15, 2010 until full payment. *See* Pet. ¶ 59; Honlet Decl. ¶ 16, Translated Partial Award at 115 ¶ 239.

- $162,500 as the DRC's portion of the arbitral fees, with interest at the rate of 5% per year from February 22, 2016 until full payment. *See* Pet. ¶ 64; Honlet Decl. ¶ 18; Final Award at 16 ¶ 48.

- €200,000 as compensation for CTC's legal fees, with interest at the rate of 5% per year from February 22, 2016 until full payment. *See* Pet. ¶ 64; Honlet Decl. ¶ 18, Final Award at 16 ¶ 48.

"Courts in the United States ordinarily give judgment on causes of action arising in another state, or denominated in a foreign currency, in United States dollars . . . ." *Africard*, 210 F. Supp. 3d at 128 (quoting Restatement (Third) of Foreign Relations Law § 823(1) (internal quotation marks omitted)). Therefore, I will convert this last amount from euros to dollars. If, as here, "the foreign currency has appreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of judgment or the date of payment." *Id.* at 128–29. According to the Department of the Treasury's Bureau of the Fiscal Service, each euro is currently worth 1.1377 dollars.[8] As

---

[7] This amount represents the initial award of $91,696,347, *see* Translated Partial Award at 115 ¶ 239, combined with an additional $853,751 awarded in the Addendum to correct a clerical error, *see* Honlet Decl. ¶ 17; Addendum ¶ 27.

[8] *See* "Treasury Reporting Rates of Exchange as of June 30, 2019," *U.S. Department of the Treasury*, https://www.fiscal.treasury.gov/reports-statements/treasury-reporting-rates-exchange/current.html. By contrast, at the time of the final award on February 22, 2016,

14

such, the DRC owes CTC $227,540, plus applicable interest, as compensation for CTC's legal fees.

## CONCLUSION

For the foregoing reasons, CTC's [Dkt. #11] Motion for Default Judgment and its [Dkt. #1] Petition to Confirm Arbitration Award and to Enter Judgment are GRANTED.[9] A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

each euro was worth 1.0881 dollars. *See* "Treasury Reporting Rates of Exchange as of December 31, 2015," *U.S. Department of the Treasury*, https://www.fiscal.treasury.gov/files/reports-statements/treasury-reporting-rates-exchange/itin-12-31-2015.pdf.

[9] As requested, I award prejudgment interest as per the terms of the various awards. Postjudgment interest, however, is governed by federal law. *See* 28 U.S.C. § 1961(a) ("Interest *shall* be allowed on *any* money judgment in a civil case recovered in district court. . . . Such interest *shall* be calculated from the date of entry of the judgment" at the statutory rate. (emphasis added)).

15